Chester L. TAYLOR, Jr., Appellant

v.

Roger BARLOW, Monroe County Sheriff; and Monroe County Sheriff's Office, Appellees.

No. 2011–CA–001779–MR.

Court of Appeals of Kentucky.

Sept. 14, 2012.

Chester Taylor, Jr., Pine Knot, KY, pro se.

No Brief Filed for appellee.

Before CLAYTON, MAZE and TAYLOR, Judges.

## OPINION

MAZE, Judge:

Appellant, Chester Taylor, appeals the Monroe Circuit Court's *sua sponte* dismissal of his suit seeking records requested from the Appellee, Monroe County Sheriff and seeking damages pursuant to Kentucky's Open Records Act ("KORA") for that agency's failure to disclose the documents in a timely manner. We reverse and remand, finding that the trial court erred in dismissing Taylor's case for lack of standing and in finding that Taylor was engaged in the unauthorized practice of law.

We first note that Appellee has not submitted a brief on appeal. Pursuant to Civil Rule ("CR") 76.12(8), when a party does not submit a brief within the time allowed, this Court may, among other options, accept Appellant's statement of the facts and issues as correct. Under the circumstances presented in this case, we elect to do so.

In January of 2011, Michael Wayne Dunagan, a citizen of Tennessee, executed a Limited Power of Attorney authorizing Chester Taylor ("Taylor") to act in his name for the purpose of pursuing information pertaining to his 2009 arrest and treatment while in the custody of the Monroe County Sheriff's Department ("Sheriff"). Seven days after the execution of that document, Taylor filed a written Open Records Request with the Sheriff's office. Taylor signed the request form, listing himself as the requester and describing himself and as "a lawful representative of Michael Wayne Dunagan." ("Request to Inspect Public Records" at 1). The Sheriff failed to respond to Taylor's request and, as a result, Taylor filed an Open Records Appeal with the Attorney General's Office, pursuant to KRS 61.880. The Sheriff did not respond. The Attorney General's Office issued its decision in favor of Taylor on March 15, 2011, stating that the Sheriff's failure to release the requested documents constituted "a clear violation of KRS 61.880(1)" and requiring the Sheriff to remit "copies of any *existing* records in its custody which are responsive to [Tay-

lor's] request" unless they met an exception under KORA. 11–ORD–038 at 3. The Sheriff did not appeal the Attorney General's decision, instead deciding to disclose some, but not all, of the documents Taylor originally requested. Pursuant to KRS 61.880(5)(b), the Attorney General's decision took on the force and effect of law on April 14, 2011. On May 2, 2011, believing he still had not received all documents, and seeking damages for the Sheriff's lack of compliance with KORA, Taylor filed suit in Monroe Circuit Court.

Taylor's suit followed the normal preliminary steps of litigation until August 5, 2011, when the trial court issued a *sua sponte* order for a hearing to address the issue of Taylor's standing. At the hearing, of paramount interest to the court was (1) that Taylor was not a licensed attorney, yet he was prosecuting a case on behalf of Mr. Dunagan; and (2) that the records Taylor sought did not pertain to him, but to Mr. Dunagan only, calling into question Taylor's standing to sue. Taylor expressly denied that he was practicing law and further argued that, as the person requesting the information, he was the proper party in interest and was entitled to sue for the requested documents pursuant to KORA. After argument concluded, the trial court dismissed Taylor's suit. As basis for the dismissal, the court cited Taylor's lack of standing and the court's belief that Taylor was engaged in the unauthorized practice of law under *Frazee v. Citizens Fidelity Bank & Trust*, 393 S.W.2d 778, 782 (Ky. 1965). This appeal followed.

On appeal, Taylor contends that the trial court erred in dismissing his suit. He argues that he is a *pro se* litigant and not engaged in the unauthorized practice of law. Taylor further asserts that, as the party requesting the records, he has standing to sue and is entitled, as a matter of law, to the records he is seeking pursuant to KORA. Additionally, Taylor argues that the court's *sua sponte* dismissal of his suit violated his due process rights and that the court failed to follow the correct standard in dismissing his case. In reviewing the court's decision, Taylor suggests that we apply the "clearly erroneous" standard. However, because the trial court is not required to make factual findings when ruling on a motion to dismiss, the determination is purely a matter of law; consequently, the Court of Appeals reviews the decision of the trial court *de novo*. *Mitchell v. Coldstream Laboratories, Inc.*, 337 S.W.3d 642 (Ky.App.2010) (*citing James v. Wilson*, 95 S.W.3d 875 (Ky.App.2002) and *Revenue Cabinet v. Hubbard*, 37 S.W.3d 717 (Ky.2000)).

We begin with the court's *sua sponte* dismissal of Taylor's case on the basis that he lacked standing to sue under KORA. The Supreme Court of Kentucky has recognized that the "absence of specific authorization in the Civil Rules does not mean that a trial court is left without its inherent power and discretion to dismiss, *sua sponte*, ... when it is necessary to an orderly disposition of cases pending before it." *City of Hazard v. Baker*, 419 S.W.2d 535 (Ky.1967). However, the Court has also stated that "[t]he trial court does not have unlimited discretion to dismiss with or without prejudice, and the basic criterion is whether the opposing party will suffer some substantial injustice or be substantially prejudiced." *Sublett v. Hall*, 589 S.W.2d 888 (Ky.1979). The essential question becomes does KORA grant Taylor standing in the present case and did the trial court's dismissal of his case for lack of standing cause him to "suffer some substantial injustice or be substantially prejudiced?" *Id.*

Because our primary concern is standing, it is unnecessary to provide the lengthy procedural steps established in

KORA for requesting and acquiring public records. It is enough to say that Taylor did not receive a response from the Sheriff within the time period required under KORA. Meanwhile, Taylor followed, nearly to the letter, the procedures set out in KORA, both for his initial request for records and his appeal of the Sheriff's failure to release those records, which culminated in this suit, his standing for which we now review.

 In general, for a party to have standing, the interest of the party must be a present or substantial interest, as distinguished from a mere expectancy. *Williams v. Phelps*, 961 S.W.2d 40, 41 (Ky.App.1998) (*citing Winn v. First Bank of Irvington*, 581 S.W.2d 21, 23 (Ky.App. 1978)). A party must have a real, direct, present and substantial right in the subject matter of the controversy. *Id.* In sum, standing is the right to appear and seek relief in a particular proceeding. *Id.* In the present case, we look to the controlling statute to determine those whom the General Assembly intended to benefit from its provisions.

The policy behind KORA, as the General Assembly stated in the law's introduction, is "that free and open examination of public records is in the public interest ... even though such examination may cause inconvenience or embarrassment to public officials or others." KRS 61.871. KORA goes on to describe those who are entitled to seek public records and how they may do so.

(1) *All* public records shall be open for inspection by *any* person, except as otherwise provided by KRS 61.870 to 61.884.

. . .

(2) *Any* person shall have the right to inspect public records. The official custodian may require written application, signed by the applicant and with his name printed legibly on the application, describing the records to be inspected. The application shall be hand delivered, mailed, or sent via facsimile to the public agency.

. . .

(4) If the person to whom the application is directed does not have custody or control of the public record requested, that person shall notify the applicant and shall furnish the name and location of the official custodian of the agency's public records.

KRS 61.872 (*emphasis added*).

Considering the plain meaning of KORA's very inclusive language provided above, the trial court's reasoning in dismissing Taylor's suit is fundamentally flawed. In its order dismissing, the trial court relied heavily on the fact that Taylor was not the party whom the requested records concerned; rather he was someone requesting records which pertained to Michael Wayne Dunagan and was doing so on Mr. Dunagan's behalf. However, KORA's language does not permit such a factual distinction to inform a court's ruling on standing. KORA's provision for standing, as explicitly stated by the General Assembly in KRS 61.871, permits any person to review any public record, unless exempt or otherwise prohibited by law, and allows the person denied review of those records to seek relief with the Attorney General and in circuit court. Neither KORA, nor any other authority limits or amends KRS 61.871's categorical language of "any person" to mean only those whom the requested records concern; nor does KORA prevent an individual from seeking records at the request or on behalf of another person. To read the plain language of KRS 61.871 and 61.872 any other way is to subvert the express intent of the General Assembly as it is stated in that provision.

Accordingly, Taylor has standing to sue under KORA. It is immaterial that Taylor seeks records pertaining to someone else. As the party requesting records held by a public agency, and as the sole plaintiff in the suit against the Sheriff, Taylor has "a real, direct, present and substantial right" in the disclosure, or at least a response regarding the withholding, of the records which he seeks. *See Winn, supra.* Taylor is the "any person" envisioned and provided for under KORA. As such, he is exercising his "right to appear and seek relief" as the provisions of KORA allow him to do. *See Winn, supra.* Therefore, we find that KORA granted Taylor standing to sue for damages to which a person requesting public records may be entitled pursuant to that act. Furthermore, we find that the trial court erred as a matter of law when it dismissed Taylor's case for lack of standing, as such a result would certainly and "substantially prejudice" his case if not remedied. *See Sublett, supra.*

■ We briefly address the court's finding that Taylor, by bringing a suit regarding records which pertained to another person, was engaged in the unauthorized practice of law. We hold that Taylor was not engaged in such activity and in finding he was, the trial court erred as a matter of law.

■ There are numerous provisions in Kentucky statutes, rules and case law which provide for and protect *pro se* litigants without creating the danger that they might slip into the role of a practicing attorney. Kentucky's highest court has said, "[o]nly persons who meet the educational and character requirements of this Court and who, by virtue of admission to the Bar, are officers of the Court and subject to discipline thereby, may practice law. The sole exception is the person acting in his own behalf." *Frazee v. Citizens Fidelity Bank & Trust Co.,* 393 S.W.2d 778, 782 (Ky.1965) (emphasis added). Additionally, an individual may file and practice his own law suit in any court within the Commonwealth, but if he elects to do so, he is bound by the same rules and procedures as a licensed lawyer. 1956 OAG 38077. Supreme Court Rule ("SCR") 3.020, which defines the practice of law, also states, "nothing herein shall prevent any natural person not holding himself out as a practicing attorney from drawing any instrument to which he is a party without consideration unto himself therefor." SCR 3.020

Nothing in Taylor's actions or pleadings submitted to the court indicate that he was holding himself out as an attorney in this case. For example, his name was listed as Plaintiff, not as Plaintiff's counsel, on all pleadings filed with the court during the course of his case. While Taylor was obviously familiar with the language, custom and construction of the law, everything in the record establishes that he was merely representing himself *pro se*, and not representing Michael Wayne Dunagan. Though Taylor took the extraordinary and unnecessary step of obtaining a Limited Power of Attorney from Mr. Dunagan, he did not interpret that instrument as granting to him the powers and privileges of a licensed attorney, as many fallaciously do. In sum, Taylor's actions in requesting the public records and in suing for their disclosure did not cross the line drawn in the various provisions above. Taylor, in fact, is the "sole exception" provided for in *Frazee* and SCR 3.020. *See Frazee, supra.* Therefore, Taylor was a *pro se* litigant and was not engaged in the unauthorized practice of law. Any finding to the contrary upon which the trial court may have relied in dismissing Taylor's case was erroneous.

Having found for Taylor on the two more imperative issues he raises in this case, the remaining issues, including due process and the appropriateness of the Court's *sua sponte* review of the case, are moot and we do not reach them in this decision. Accordingly, we reverse the trial court's order dismissing Taylor's suit and remand this case for further proceedings on the merits of the open records petition.

ALL CONCUR.