**James BALDWIN, Appellant**

v.

**James MOLLETTE, Debbie Mollette, and Kristian J. Mollette, Appellees**

**NO. 2016-CA-001693-ME**

Court of Appeals of Kentucky.

AUGUST 25, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: James Baldwin, pro se, Northpoint Training Center, Burgin, Kentucky.

NO BRIEF FOR APPELLEE.

BEFORE: KRAMER, CHIEF JUDGE; CLAYTON AND TAYLOR, JUDGES.

## OPINION

CLAYTON, JUDGE:

James Baldwin, *pro se*, appeals the Johnson Family Court's order denying him visitation with his children. No reply brief was filed on behalf of the Mollettes in this action. After careful review, we reverse and remand.

## BACKGROUND

James Baldwin is the father of K.P.M., a daughter, whose date of birth is June 13, 2007, and K.M.B., a son, whose date of birth is January 29, 2011. The children's mother is Kristian Mollette. Both parents have an extensive history involving the abuse of drugs. Because of the mother's substance abuse, the children were removed from the custody of the mother. At

that time, the family court placed the children in the custody of the maternal grandparents, James and Debbie Mollette, who were named permanent custodians.

This action commenced on September 9, 2016, when the father filed a motion for access and visitation with the children. In the motion, he described access to the children as the ability to telephone and email them as well as receive photographs. The father planned to use the J-Pay system at the prison for the exchange of photos, emails, and telephonic communication with the children.

The family court held a hearing on October 13, 2016. The Mollettes appeared *pro se.* Because of the father's incarceration, he was available by telephone during the hearing. The family court also appointed him an attorney, who was present at the hearing. The father is serving a fifteen-year sentence at the North Point Training Center. His earliest possibility for parole would be in September 2017. He testified that he had not seen the children in three years. But the father claimed that he has tried to call the Mollettes and speak to the children, but they do not answer the phone. He acknowledged that he had not completed the classes which Social Services had required during the pendency of the juvenile action.

Also testifying at the hearing was Shawn Mollette, the children's uncle. He appeared for James Mollette because he has James's power of attorney. James is a contractor working in Afghanistan. Shawn testified that he is uncomfortable with the father having visitation. The little boy does know his father, and the little girl has not spoken to her father in years. The father made no effort to contact the children until now. Further, Shawn explained that the father did not complete any tasks required by social services during the juvenile action. The father has been in and out of jail

for years. Finally, Shawn did not believe visits to the penitentiary would be healthy for the children.

Debbie Mollette testified next. In addition to the above information, she added that the father had promised to see the children on numerous occasions and did not show up. She disputed the father's contention that he called from Northpoint to inquire about the children. Additionally, Debbie believes that his daughter is terrified and wants no communication with her father. Debbie observed that the child was used as a shield during a domestic violence incident. And she pointed out that the little girl has been hurt because her father did not show up for scheduled visitations. Debbie noted that his son does not know him. Further, the father has paid no child support. Finally, Debbie alleged that on one occasion, he was high when he visited his six-week-old son.

The next witness was the mother. Before the father went to jail, the mother obtained a domestic violence order against him. In addition, when she did arrange visitation with the children, he failed to see the children. Her daughter is very confused because she thinks her father has chosen not to love her. The little boy has not seen his father since he was an infant. The mother averred that the father has walked away from the children numerous times. Nonetheless, the mother is agreeable to the children having visitation with him if they want to see their father.

The family court entered an order on October 21, 2016. In the order, it noted that the father did not complete any required treatment with social services during the pendency of the juvenile case, plus these services are not available in the jail. The family court looked at the visitation history of the father. It observed that the father failed to appear at scheduled visitations when he could have. Lastly, the fami-

ly court remarked on the father's criminal history, which included current and previous incarcerations.

Regarding whether to permit the father to receive phone calls from the children or exchange photos or emails, the family court left this decision to the permanent custodians. And family court held that when the father was released on parole, the family court would reconsider the request for supervised visitation or would reconsider the request if the children expressed the desire for visitation. But the family court denied the motion for visitation.

The father now appeals from this order.

## STANDARD OF REVIEW

■ We review child visitation cases under an abuse of discretion standard. *Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008). An appellate court may "only reverse a [family] court's determinations as to visitation if they constitute a manifest abuse of discretion, or were clearly erroneous in light of the facts and circumstances of the case." *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky. App. 2000) (citation omitted). An appellate court, however, reviews legal issues *de novo. Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001). Thus, we review the circuit court's findings of fact for clear error, and its conclusions of law *de novo.*

With these standards in mind, we turn to the matter at hand.

## ANALYSIS

■ The statute governing visitation in Kentucky is Kentucky Revised Statutes (KRS) 403.320(1), which provides "[a] parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotion-

al health." The statute has created the presumption that visitation is in the child's best interest. *Smith v. Smith*, 869 S.W.2d 55, 56 (Ky. App. 1994). Further, the burden of proving that visitation with the parent would harm child is on one who would deny visitation. *Id.*

■ Thus, a presumption for visitation exists for a parent unless a family court determines that visitation would seriously endanger the child. And the Mollettes have the burden to establish that visitation would seriously endanger these children. Here, the family court's order makes no reference to this standard and does not address whether visitation with the father would endanger these children. Therefore, we reverse the family court's holding denying visitation and remand for another hearing so that the family court may ascertain whether visitation with the father would seriously endanger the children's physical, mental, moral, or emotional health.

■ In addition, we are troubled by two procedural issues. First, we address the appearance of Shawn Mollette representing his father as a party at the hearing. Based on a durable power of attorney, Shawn was allowed to stand in for his father in this matter. "[A] power of attorney is a form of agency." *Moore v. Scott*, 759 S.W.2d 827, 828 (Ky. App. 1988) (citation omitted). The scope of an agent's authority is limited to that which the principal confers upon the agent, or that which is reasonable for the agent or third parties to believe the principal intended to confer. *Herfurth v. Horine*, 266 Ky. 19, 98 S.W.2d 21, 24 (1936). In the instant case, the power of attorney appears to be a standard power of attorney and is limited to the powers conferred in the document. The power of attorney makes no specific reference to any duty or decision-making au-

thority for Shawn as related to James's status as permanent custodian of the children.

■ But besides the limited language of the James's power of attorney, a power of attorney does not grant the possessor the power of the attorney the ability to represent that person in a court of law. This right is reserved for members of the bar. In Kentucky, one may represent himself or herself *pro se* but that ability is limited to one's self. As stated in *Taylor v. Barlow*, 378 S.W.3d 322, 326 (Ky. App. 2012), "an individual may file and practice his own lawsuit in any court within the Commonwealth...." Our Supreme Court clarifies the role of a *pro se* litigant by explaining if people represent themselves, they are bound by the same rules and procedures as a licensed lawyer. *Id.* But the Supreme Court notes that **only** persons who are admitted to the bar may practice law and represent others. The sole exception is the person acting in his own behalf. Hence, Shawn could not act as James "attorney-in-fact" because such representation entails the unauthorized practice of law.

■ The family court order contained several opinions and conclusions made by Shawn acting as his father's "attorney-in-fact." Since Shawn could not stand in for his father, his statements are hearsay because they were attributed to James, a party not at the hearing, and offered for the truth of the matter. Kentucky Rules of Evidence (KRE) 801(c). Hearsay is not admissible under these circumstances. *Id.*

■ The second procedural issue that is confusing and problematic is that the matter emanates from a paternity action. Although the father moved for visitation in the paternity action, he lists the respondents as James and Debbie Mollette. The Mollettes are indeed the permanent custo-dians of the children. However, there is no order designating them as permanent custodians in the paternity case file. And while the father styled his motion for visitation, designating James and Debbie Mollette as the opposing parties, the family court styled its order in the same fashion as the paternity matter, that is, Kristian J. Mollette v. James E. Baldwin. But if the Mollettes are the permanent custodians, the motion for visitation should name them as the respondents.

It is incumbent upon the family court to ensure that the visitation matter is heard on the appropriate docket. The family court hears cases related to divorce; adoption and termination; paternity; dependency, neglect and abuse; domestic violence; and status. Certain issues, like custody and visitation, occur in multiple specialized areas. Here, there is no custody order in the paternity action, so it appears that the matter is not properly filed and should be filed where custody has been determined.

■ Additionally, testimony at the hearing suggested that domestic violence had occurred between the father and the mother. Again, no such orders are found in the paternity file. Nonetheless, a history of domestic violence changes the statutory analysis in visitation matters. When domestic violence exists, a family court must follow the statutory directives of KRS 403.320(2), which provides:

> If domestic violence and abuse, as defined in KRS 403.720, has been alleged, the court shall, after a hearing, determine the visitation arrangement, if any, which would not endanger seriously the child's or the custodial parent's physical, mental, or emotional health.

Therefore, if domestic violence has occurred, the family court has the discretion as to whether to allow visitation, and if it does order visitation, it must set up visitation schedule so that neither the child or

the custodian's is seriously endangered. *See Abdur—Rahman v. Peterson*, 338 S.W.3d 823, 826 (Ky. App. 2011). Again, it is missing or incomplete evidence that may be determinative of the matter.

### CONCLUSION

We reverse the decision of the Johnson Circuit Court and remand for a hearing on whether visitation is warranted pursuant to the requirements of KRS 403.320(1) or (2).

ALL CONCUR.