RENDERED: AUGUST 6, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0892-MR

LINCOLN TRAIL GRAIN GROWERS
ASSOCIATION, INC.; NICHOLAS HARDESTY;
DON BEWLEY; EDELEN FARMS, LLC;
RYAN HAGER; BEN SHEERAN;
AND DAVID PADGETT                                              APPELLANTS

|   |   |   |
|---|---|---|
| v. | APPEAL FROM MEADE CIRCUIT COURT<br>HONORABLE BRUCE T. BUTLER, JUDGE<br>ACTION NO. 20-CI-00001 |   |

MEADE COUNTY FISCAL COURT;
CITY OF BRANDENBURG; MEADE
COUNTY RIVERPORT AUTHORITY;
MEADE COUNTY-BRANDENBURG
INDUSTRIAL DEVELOPMENT AUTHORITY;
BILL CORUM; BRYAN CLAYCOMB;
CONSOLIDATED GRAIN & BARGE CO.;
GREENLAND ACQUISITION COMPANY, INC.;
AND NUCOR CORPORATION                                        APPELLEES

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; DIXON AND MAZE, JUDGES.

MAZE, JUDGE:  Lincoln Trail Grain Growers Association, Inc. and individual members (collectively Lincoln Trail), along with Nicholas Hardesty and Don Bewley, appeal from an order of the Meade Circuit Court dismissing their claims alleging violations of the Open Meetings Act.  The trial court dismissed their complaint, concluding that none of the appellants had established constitutional standing to bring the claims.  We conclude that all of the appellants have alleged personal injuries fairly traceable to the defendants' allegedly unlawful conduct and likely to be redressed by the requested relief.  Therefore, the trial court erred by dismissing the complaint for lack of standing.  Hence, we vacate the order dismissing and remand for additional proceedings on the merits of those claims.

For purposes of this appeal, the following facts are relevant:  The Meade County Riverport Authority (the Riverport Authority) is a public board established under KRS[1] 65.510, *et seq.*  The Meade County-Brandenburg Industrial Development Authority (the Industrial Authority) is a public board established pursuant to KRS 154.50-301, *et seq.*  The Meade County Fiscal Court (Fiscal Court) serves as the legislative body for Meade County and is established pursuant to Kentucky Constitution, Section 144 and KRS 67.040, *et seq.*

---

[1] Kentucky Revised Statutes.

In 2003, the Riverport Authority leased 50 acres (the Riverport Property) along the Ohio River in Brandenburg, Kentucky. In 2010, the Industrial Authority purchased a 550-acre tract from Arch Chemical, Inc., which included the Riverport Property leased by the Riverport Authority. An amended ground lease established the Industrial Authority as the lessor of the Riverport Property, and the Riverport Authority as the lessee.

Shortly thereafter, the Riverport Authority entered into a lease with Consolidated Grain & Barge Co. (CGB). Under the agreement, CGB agreed to construct and operate a grain elevator on a 15-acre portion of the Riverport Property. The lease provided for a ten-year term from completion of the grain elevator. In late 2014, the grain elevator was completed and opened for business.

Beginning in early 2019, the Fiscal Court and the Industrial Authority engaged in negotiations with Nucor Corporation (Nucor) to build a steel mill on the Riverport Property. As part of these negotiations, Greenland Acquisition Company, Inc. (Greenland) entered into an option to purchase most of the former Arch Chemical property from the Industrial Authority. Nucor took the position that the operation of its steel mill would be incompatible with the continued operation of the grain elevator. By September 2019, Nucor, CGB, the Fiscal Court, and the Industrial Authority drafted a lease termination agreement. The agreement required Nucor to pay CGB the sum of $12,000,000 in exchange for

termination of its lease agreement and cessation of operation of the grain elevator by March 31, 2020.

However, the termination agreement required the approval of the Riverport Authority, which was a party to the lease with CGB. The Fiscal Court held a special meeting on October 1, 2019. The agenda for the meeting included the general item, "Riverport," with no other detail about the action to be taken. During the meeting, the Fiscal Court voted to replace two members of the Riverport Authority, Nicholas Hardesty and Don Bewley, on the stated grounds that their terms had expired. The Fiscal Court appointed two new members, Bill Corum and Bryan Claycomb, to those positions on the Riverport Authority.[2]

Immediately following the Fiscal Court meeting, the Riverport Authority, including the two newly-appointed members, met and voted to approve the lease termination agreement. On December 13, 2019, the lease termination agreement was formally executed by all parties, namely: the Riverport Authority, the Industrial Authority, the Fiscal Court, CGB, and Greenland on behalf of Nucor.

On June 1, 2020, Lincoln Trail filed this action on behalf of grain farmers in Meade County who were affected by the closure of the grain elevator. Edelen Farms, LLC, Ryan Hager, Ben Sheeran, and David Padget are members of

---

[2] The minutes of the specially-called meeting of the Fiscal Court reflect that the only Riverport item discussed was the appointment of the two new members to the Riverport Authority.

Lincoln Trail. Lincoln Trail and its members alleged that the votes by the Fiscal Court and the Riverport Authority were conducted in violation of the Open Meetings Act, KRS 61.800 *et. seq.*, and that the vote of the Riverport Authority was conducted without a quorum of proper members. Finally, Lincoln Trail alleges that the Riverport Property is held in trust for the public and that the Meade County defendants lacked legal authority to sell the property. Consequently, Lincoln Trail sought declaratory relief holding the lease termination agreement void, and injunctive relief preventing CGB from ceasing operation of the grain elevator.

Hardesty and Bewley joined the action through an amended complaint, which challenged their removal from the Riverport Authority. In addition to the Open Meetings Act violations, Hardesty and Bewley allege that their prior terms had automatically renewed and that they were not subject to replacement by the Fiscal Court. In the alternative, Hardesty and Bewley allege the terms of the other members of the Riverport Authority had also expired but those members were not replaced. Hardesty and Bewley allege that the Fiscal Court arbitrarily removed them from the Riverport Authority based on their stated opposition to the lease termination agreement. Hardesty and Bewley sought declaratory relief setting aside their removal and replacement as members of the Riverport Authority.

In lieu of an answer, the Meade County defendants and Nucor filed a motion to dismiss pursuant to CR[3] 12.02. They argued that Lincoln Trail and its members lack constitutional standing to assert the claims. Following briefing and arguments of counsel, the trial court granted the motion. The court concluded that none of the plaintiffs, including Hardesty and Bewley, had asserted any concrete interest in the subject matter of the actions by the Fiscal Court or the Riverport Authority. Consequently, the trial court dismissed the complaints. This appeal followed. Additional facts will be set forth below as necessary.

CR 12.02 sets out defenses which may be asserted without filing a responsive pleading, including "(f) failure to state a claim upon which relief can be granted[.]" A motion to dismiss for failure to state a claim upon which relief may be granted "admits as true the material facts of the complaint." *Upchurch v. Clinton County*, 330 S.W.2d 428, 429-30 (Ky. 1959). A trial court should not grant such a motion "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved . . . ." *Pari-Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL-CIO v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977). Whether a court should dismiss an action pursuant to CR 12.02 is a question of law. *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App.

---

[3] Kentucky Rules of Civil Procedure.

2002). Consequently, we conduct a *de novo* review of the trial court's order dismissing the action. *Morgan v. Bird*, 289 S.W.3d 222, 226 (Ky. App. 2009).

The sole question on appeal concerns the application of the doctrine of "constitutional standing," as adopted by the Kentucky Supreme Court in *Commonwealth, Cabinet for Health and Family Services, Department for Medicaid Services v. Sexton by and through Appalachian Regional Healthcare, Inc.*, 566 S.W.3d 185 (Ky. 2018). The facts in *Sexton* involved a Medicaid patient who was admitted to the hospital for observation, but her Medicaid provider denied her request for additional hospitalization and a cardiology consultation. Despite the denial, the hospital provided the services. Thereafter, the patient and the hospital sought a hearing with the Cabinet for Health and Human Services to challenge the denial. The Cabinet dismissed the proceeding, concluding that neither the patient nor the hospital had standing because neither would be entitled to recover even if the denial were improper. *Id.* at 188.

On further appeal, the Kentucky Supreme Court affirmed the dismissal based on the doctrine of constitutional standing. The Court adopted the analysis for the doctrine from the United States Supreme Court analysis in *Lujan v Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). The doctrine establishes standing as a prerequisite to the existence of a justiciable cause of action. "In essence the question of standing is whether the

litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Sexton*, 566 S.W.3d at 193 (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). In the absence of a showing of such standing, a court lacks original jurisdiction over a case to decide its merits because the case is nonjusticiable due to the plaintiff's failure to satisfy the constitutional standing requirement. *Id.* at 196-97.

The Court in *Sexton* recognized that *Lujan* and its line of cases deal with standing requirements in the context of the limit on federal judicial power, not state judicial power. *Id.* at 193. Furthermore, Kentucky typically recognizes the issue of standing as an affirmative defense which may be waived unless properly pleaded. *Id.* at 191 (citing *Harrison v. Leach*, 323 S.W.3d 702, 703 (Ky. 2010)). Nevertheless, the Court formally adopted the *Lujan* test as an integral component of the "'justiciable cause" requirement in Kentucky Constitution, Section 112(5) underlying the trial court's jurisdiction. *Id.* at 195-96.

> So, at bottom, for a party to sue in Kentucky, the initiating party must have the requisite constitutional standing to do so, defined by three requirements: (1) injury, (2) causation, and (3) redressability. In other words, "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." "[A] litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent . . . ." "The injury must be . . . 'distinct and palpable,' and not 'abstract' or 'conjectural' or 'hypothetical.'" "The injury must be 'fairly' traceable to the challenged

action, and relief from the injury must be 'likely' to follow from a favorable decision."

*Id.* at 196 (footnotes omitted).

The Court in *Sexton* went on to explain that, while the legislature may create a statutory cause of action, a court cannot entertain original jurisdiction over such action unless the plaintiff satisfies the constitutional standing requirement. *Id.* Consequently, the existence of statutory standing does not necessarily confer constitutional standing upon a plaintiff. Rather, a court exercising original jurisdiction must always conduct the constitutional standing analysis. *Id.*

Pursuant to this analysis, the Court recognized that the legislature had created a statutory right to challenge the provider's denial of service under KRS Chapter 13B. However, the Court concluded that the legislature could not grant standing to a party who had no direct interest in the outcome of the proceeding. *Id.* at 198. The Medicaid rules prevented the patient from being held liable for the costs of the services. Furthermore, at the time of the appeal in *Sexton*, the hospital had no right to reimbursement of the services which it provided. *Id.* Therefore, the Court concluded that neither the patient nor the hospital had suffered a redressable injury. *Id.* at 198-99.

The Kentucky Supreme Court again addressed constitutional standing in *Overstreet v. Mayberry*, 603 S.W.3d 244 (Ky. 2020). In that case, eight members of the Kentucky Retirement System's defined-benefit retirement plan

brought an action against eleven Retirement Systems trustees and officers and against third parties who did business with the Retirement Systems. The members alleged that the trustees and officers engaged in a pattern of reckless investment which jeopardized the retirement plans. They also alleged that the third parties sold high-risk investments to the Retirement Systems in exchange for excessive fees. *Id.* at 250-51.

After discussing the elements set out in *Sexton*, the Court concluded that the plaintiffs failed to establish constitutional standing. The Court focused on the plaintiffs' failure to allege an injury-in-fact. *Id.* at 252-53. The Court noted that the plaintiffs had not alleged that their benefits or right to receive benefits had been affected by the alleged misconduct by the Retirement Systems trustees or the third parties. The Court also noted that the state is required to cover any pension shortfalls for vested beneficiaries. *Id.* at 253-54. Consequently, the Court held that the plaintiffs' allegation of an increased risk of not receiving pension benefits in the future was too speculative to show an actual injury. *Id.* at 254-56.

Turning to the current case, we must first point out that there are two distinct groups of plaintiffs: Hardesty and Bewley, who are challenging their removal and replacement as members of the Riverport Authority; and the Lincoln Trail parties, who are challenging the actions of the Riverport Authority and the Fiscal Court approving the lease termination agreement. In the case of the first

-10-

group, we conclude that the trial court clearly erred in finding that Hardesty and

Bewley lack constitutional standing to bring this action.

As previously mentioned, Hardesty and Bewley allege that the Fiscal

Court violated the Open Meetings Act by conducting a vote to replace them

without notice of the action to be taken provided on the agenda prior to the

meeting. KRS 61.823.[4] Hardesty and Bewley further allege that their terms of

---

[4] In pertinent part, KRS 61.823 sets out the following requirements for notice of a special meeting by a public agency:

> (3) The public agency shall provide written notice of the special meeting. The notice shall consist of the date, time, and place of the special meeting and the agenda. Discussions and action at the meeting shall be limited to items listed on the agenda in the notice.

> (4) (a) As soon as possible, written notice shall be delivered personally, transmitted by facsimile machine, or mailed to every member of the public agency as well as each media organization which has filed a written request, including a mailing address, to receive notice of special meetings. The notice shall be calculated so that it shall be received at least twenty-four (24) hours before the special meeting. The public agency may periodically, but no more often than once in a calendar year, inform media organizations that they will have to submit a new written request or no longer receive written notice of special meetings until a new written request is filed.

> (b) A public agency may satisfy the requirements of paragraph (a) of this subsection by transmitting the written notice by electronic mail to public agency members and media organizations that have filed a written request with the public agency indicating their preference to receive electronic mail notification in lieu of notice by personal delivery, facsimile machine, or mail. The written request shall include the electronic mail address or addresses of the agency member or media organization.

-11-

office as members of the Riverport Authority automatically renewed because the Fiscal Court failed to appoint successors within 60 days from the expiration of their prior terms. KRS 65.008(2).[5] Finally, Hardesty and Bewley contend that the Fiscal Court's action was arbitrary because the terms of the other members of the Riverport Authority had also expired but those members were not subject to either replacement or reappointment.

For purposes of this appeal, we do not consider the merits of the claims brought by Hardesty and Bewley or any available defenses. However, we are required to consider their well-pleaded allegations in the complaint as true. *City of Pioneer Vill. v. Bullitt Cty. ex rel. Bullitt Fiscal Ct.*, 104 S.W.3d 757, 759 (Ky. 2003). Under these circumstances, they have clearly asserted a direct injury caused by the allegedly illegal actions of the Fiscal Court. Indeed, it is well

---

(c) As soon as possible, written notice shall also be posted in a conspicuous place in the building where the special meeting will take place and in a conspicuous place in the building which houses the headquarters of the agency. The notice shall be calculated so that it shall be posted at least twenty-four (24) hours before the special meeting.

[5] KRS 65.008(2) provides:

Unless otherwise provided by law, appointed members of district governing bodies shall serve until their successors are appointed and qualified. The failure of an appointing authority to appoint a successor or, if the appointing authority's appointment is subject to the approval of a legislative body, to nominate a successor within sixty (60) days of the expiration of the term of office of a member of a district governing body shall constitute the reappointment of that member for another term of office.

-12-

established that a public officer has standing to challenge the improper usurpation of his or her office. *See Jenkins v. Congleton*, 242 Ky. 46, 45 S.W.2d 456, 456 (1932). *See also* KRS 415.030. Furthermore, any action taken by the Fiscal Court in violation of the Open Meetings Act is voidable pursuant to KRS 61.848(5).

In their separate briefs, CGB and the Meade County public entities argue that Hardesty and Bewley failed to object to their removal from the Riverport Authority at the time of the Fiscal Court meeting. They also argue that the automatic re-appointment provisions of KRS 65.008(2) do not apply because the Riverport Authority failed to notify the Fiscal Court of the impending expiration of terms, as required by KRS 65.008(1). And finally, they contend that Hardesty and Bewley do not have standing to challenge the adoption of the lease termination agreement. But these are issues which go to the merits of their claims, not the issue of constitutional standing.

We conclude that Hardesty and Bewley have constitutional standing to raise the violations of the Open Meetings Act with respect to the Fiscal Court's action in removing them as members of the Riverport Authority and the subsequent action by the Riverport Authority approving the lease termination agreement. Hardesty and Bewley have clearly alleged distinct and palpable injuries caused by the actions of the Fiscal Court and the Riverport Authority for which they would be entitled to a remedy under the Open Meetings Act. Indeed,

they were directly affected by the actions of the Fiscal Court which are alleged to be in violation of the Open Meetings Act. Consequently, the courts have the authority to redress the allegedly improper action by voiding the actions taken in violation of the Open Meetings Act. If proven, the remedy for the illegal actions by the Fiscal Court would include reinstatement to their positions on the Riverport Authority. Of course, Hardesty and Bewley bear the burden of proof on these claims as well as the appropriate remedies.

The Lincoln Trail plaintiffs are in a somewhat different position, but the same analysis applies. The trial court concluded that Lincoln Trail and its members

> do not have the right to force a private business to stay in business. The Plaintiffs have no legally protected interest in the grain elevator, the real estate on which it stands, or the contractual agreements applicable thereto. The Plaintiffs are neither party to, nor intended third-party beneficiaries, of the CGB lease and, thus have no legally protectable interest in the CGB lease.

The trial court's analysis overlooks the fact that Lincoln Trail challenges the legality of the actions by the Riverport Authority and the Fiscal Court under the Open Meetings Act. As previously discussed, the mere existence of a statutory right to bring an action does not confer constitutional standing. However, the existence of a statutory cause of action is clearly relevant to a determination of such standing.

Contrary to the argument by CGB, the holding in *Sexton* did not abolish the concept of statutory standing. The Court held that the legislature cannot erase constitutional standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing. *Sexton*, 566 S.W.3d at 198 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496, 129 S. Ct. 1142, 1151, 173 L. Ed. 2d 1 (2009)). In the case of a statutory cause of action, such as the Open Meetings Act, the legislature must define a concrete interest that is affected by the deprivation of a statutory right – the deprivation of a mere procedural right *in vacuo* is not sufficient. *Id.*

The trial court cited to *Summers*, *supra*, for the proposition that deprivation of a procedural right under the Open Meetings Act is not actionable without some concrete interest affected by that deprivation. But in *Summers*, the petitioners claimed that they were deprived of their rights under the Forest Service Decisionmaking and Appeals Reform Act. While that Act permits the public to file comments on the proposed action by the Forest Service, 16 U.S.C.[6] § 1612, the standards and procedures adopted under the Act govern only the conduct of Forest Service officials engaged in project planning. *Summers*, 555 U.S. at 493, 129 S. Ct. at 1149. Consequently, the United States Supreme Court held that the petitioners had no separate standing to assert an injury for alleged violations of

---

[6] United States Code.

those procedures. As a result, the plaintiffs in *Summers* had to show that they had some individualized interest in the subject matter of the agency action. *Id.* at 493-94, 129 S. Ct. at 1149.

In contrast, the General Assembly has explicitly declared that "formation of public policy is public business and shall not be conducted in secret[.]" KRS 61.800. To that end, KRS 61.810(1) provides that "[a]ll meetings of a quorum of the members of any public agency at which any public business is discussed or at which any action is taken by the agency, shall be public meetings, open to the public at all times[.]" "The Circuit Court of the county where the public agency has its principal place of business or where the alleged violation occurred shall have jurisdiction to enforce the provisions of KRS 61.805 to 61.850, as they pertain to that public agency, by injunction or other appropriate order *on application of any person.*" KRS 61.848(1) (emphasis added). Although exceptions to the open meeting requirements are provided by the provisions of KRS 61.810, the Act provides that the exceptions are to be "strictly construed." KRS 61.800.

In essence, the General Assembly declared that *all* citizens have a direct interest in public agencies' compliance with the requirements of the Open Meetings Act. The particularized injury arises from the agency's violation of the Act itself, not specifically from the action taken. By its express terms, the Act

accords standing regardless of whether the person bringing the action has an interest in the subject matter of the action taken. *See Taylor v. Barlow*, 378 S.W.3d 322, 325 (Ky. App. 2012) (addressing standing based on similar language in the Open Records Act). Unlike in *Summers*, the rights accorded under the Act are not merely procedural but also grant the public at large a direct interest in its enforcement. In other words, the violation of the Act itself constitutes the direct and personal injury. To hold otherwise would mean that no member of the public would have standing to challenge a violation of the Open Meetings Act without a showing of direct injury caused by the agency's unlawful action. That result is at odds with the plain language of the Act.

The trial court also found that Lincoln Trail's claims fail for lack of redressability because the court "does not have the power to order a privately-owned grain elevator to halt its de-construction and to continue operations." The trial court focused narrowly on the result of the actions of the Fiscal Court and the Riverport Authority, rather than their alleged violations of the Open Meetings Act. As previously noted, "[a]ny rule, resolution, regulation, ordinance, or other formal action of a public agency without substantial compliance with the requirements of [the Act] shall be voidable by a court of competent jurisdiction." KRS 61.848(5). The Act also allows a plaintiff to recover costs, including reasonable attorney fees, incurred while enforcing an agency's willful violation. KRS 61.848(6). Because

the Act creates a concrete remedy, we conclude that Lincoln Trail has asserted a redressable injury.

As discussed with the claims brought by Hardesty and Bewley, we do not need to reach the merits of the underlying claim at this juncture. However, Lincoln Trail alleges that the vote by the Fiscal Court to appoint new members to the Riverport Authority and the subsequent vote by the Riverport Authority to join in the lease termination agreement were conducted in violation of the Act. The enforcement of a public contract, the appointment of individuals to public office, and most significantly, the sale of publicly-owned property to private entities, are clearly matters which must be conducted publicly and with prior notice unless a specific exception is shown.

If the Appellants show that they are entitled to relief, the trial court may require the Fiscal Court and the Riverport Authority to recommence their approval of the lease termination agreement at the point when the illegal conduct occurred. *Reed v. City of Richmond*, 602 S.W.2d 183, 184 (Ky. App. 1980). We recognize that the procedural posture of this case presents some issues with the remedies available to Lincoln Trail. When an agency takes action that is not in "substantial compliance" with the Act, that action "shall be voidable by a court." KRS 61.848(5). "A 'voidable' action is an action that is valid until it is annulled."

*Carter v. Smith*, 366 S.W.3d 414, 424 (Ky. 2012) (citing BLACK'S LAW

DICTIONARY 1709 (9th ed. 2009)).

Because actions taken in violation of the Open Meetings Act are not

void *ab initio*, third parties who were not involved in the allegedly unlawful

conduct may be entitled to rely on the validity of the agreement executed by the

Fiscal Court and the Riverport Authority. Thus, CGB would not be required to

rebuild the grain elevator, nor would Nucor be required to vacate the premises

formerly leased to CGB. However, it is for the trial court to determine the

appropriate remedies available to Lincoln Trail and the equities among the various

parties. Even if no other remedies are available, the Act permits Lincoln Trail to

recover its attorney fees and costs incurred in bringing the action. KRS 61.848(6).

The availability of this remedy meets the redressability requirement for

constitutional standing. Therefore, we conclude that Lincoln Trail and its members

have constitutional standing to bring this action.

Finally, Nucor contends that the Appellants' claims are moot because

CGB has removed the grain elevator. "A 'moot case' is one which seeks to get a

judgment . . . upon some matter which, when rendered, for any reason, cannot have

any practical legal effect upon a *then* existing controversy." *Morgan v. Getter*, 441

S.W.3d 94, 98-99 (Ky. 2014) (quoting *Benton v. Clay*, 192 Ky. 497, 233 S.W.

1041, 1042 (1921)). The removal of the grain elevator may affect the remedies

available on remand.  But as discussed above, the Act provides for other remedies which may be appropriate.  Therefore, this matter is not moot.

Accordingly, we vacate the order of the Meade Circuit Court and remand this matter for further proceedings on the merits of the Appellants' complaint.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Michael C. Merrick
Charity S. Bird
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANTS:

Michael C. Merrick
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEES MEADE
COUNTY FISCAL COURT; MEADE
COUNTY RIVERPORT
AUTHORITY; MEADE COUNTY-
BRANDENBURG INDUSTRIAL
DEVELOPMENT AUTHORITY:

R. Keith Bond
Elizabethtown, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE CONSOLIDATED
GRAIN & BARGE CO.:

Anthony G. Raluy
Louisville, Kentucky

BRIEF FOR APPELLEES
NUCOR CORPORATION AND
GREENLAND ACQUISITION
COMPANY, INC.:

Douglas C. Ballentine
Christopher E. Schaefer
Lindsey L. Howard
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE NUCOR
CORPORATION:

Douglas C. Ballentine
Louisville, Kentucky