Stanley Spriggs CULVER, Torch Corporation, Cumberland Welders Supply, Inc., and Hillary Culver, Appellants,

v.

Martha Virginia CULVER, Appellee.

Court of Appeals of Kentucky.

Sept. 22, 1978.

Peter M. Davenport, Lexington, for appellants.

John T. Mandt, Somerset, for appellee.

Before HOGGE, PARK and WHITE, JJ.

PARK, Judge.

This appeal arises out of a long and bitter action for the dissolution of the marriage between the appellant, Stanley Spriggs Culver and the appellee, Martha Virginia Culver. The action was commenced by Mrs. Culver on November 24, 1972. A decree dissolving the marriage was entered on December 12, 1975. However, a final decree adjudicating the property rights of the parties was not entered until October 25, 1977. On this appeal, Mr. Culver argues that the trial court's findings are clearly erroneous with respect to the marital property of the parties.

The long delay in the adjudication of this case should not be blamed on the present circuit judge or his predecessor in office. The delay in this case is directly attributable to the animosity between the parties. The record also demonstrates that the primary fault must lie with Mr. Culver. During this litigation, he has been represented by three different attorneys and, at one time, attempted to represent himself. At the time of the initial hearings in the case, Mr. Culver failed to produce any evidence relating to the value of the business property which constituted the major portion of the marital estate. He refused to cooperate with the accountant appointed by the trial court. The record strongly suggests that Mr. Culver has attempted to hide and disguise property which should be considered as a part of the marital estate. We must sympathize with the trial judge in his efforts to reach a fair and equitable division of the marital property in this case.

I

The problems faced by the trial court in dividing the marital property can best be understood by reference to a chronology of the proceedings:

a. *Date of Final Separation.* Following the commencement of the action in November 1972, the parties attempted a reconciliation. The parties separated for the last time on August 31, 1973.

b. *Initial Proof.* The case was tried on depositions. Mrs. Culver's proof respecting

the value of the marital property was offered through the testimony of David Harris, a qualified appraisal expert. Harris offered his opinion respecting the market value of the residence of the parties at 416 East Mt. Vernon Street in Somerset; a 43 acre farm near Mt. Victory; and a wholly owned corporation, Cumberland Welding Supply Co., Inc., which constituted the chief asset of the parties. Harris testified on May 7, 1974, and his values were given as of January 1, 1974.

Mr. Culver offered no expert testimony at this stage of the proceedings. His testimony by deposition attempted to show that the 43 acre farm constituted nonmarital property; that Harris had not considered the income tax consequences of a sale of Cumberland Welders; and that Harris's valuations were excessive.

c. *Initial Submission.* An order of submission was entered on July 12, 1974. The parties submitted briefs to the trial judge in November and December 1974.

d. *Initial Rulings.* On April 21, 1975, the original trial judge rendered an opinion concluding that the marital property should be equally divided between the parties. The trial judge did not attempt to make a specific finding with respect to the value of the various items of marital property. Noting that the difference of opinion between the parties respecting the value of the marital property was so great that neither party would be satisfied by any valuation and division made by the court, the trial judge suggested that the parties should agree upon a division of the marital property. If the parties were unable to agree on a division, the court ordered that all of the marital property should be sold at public auction by the master commissioner. The trial judge also found that the 43 acre farm constituted nonmarital property that had been purchased by Mr. Culver with an inheritance from his father.

When the parties failed to meet a November deadline imposed by the trial judge for an agreement dividing the marital property, the trial judge entered a decree dissolving the marriage of the parties on December 12, 1975. This decree directed the master commissioner to sell all of the marital property of the parties. The decree also awarded certain items of personalty to each party as nonmarital property. Mr. Culver was assigned the 43 acre farm and a houseboat as nonmarital property.

e. *Subsequent Proceedings.* On December 19, 1975, Mrs. Culver filed a timely motion to alter and amend the decree of dissolution. This motion specifically challenged the finding that the 43 acre farm constituted nonmarital property. At this point in time, the present circuit judge took office. At a series of hearings arising out of disputes concerning the prior decree, both parties expressed dissatisfaction with a judicial sale of all the marital property. Neither party pressed for a judicial sale.

Much of 1976 was consumed by the parties in disputes over various items of personal property. In July 1976, the trial court appointed a certified public accountant, James T. Carney, to make an independent audit of the records of Cumberland Welders. Mr. Carney reported to the court on several occasions that he was unable to obtain the necessary records or that he had discovered discrepancies and inaccuracies in the records. Being unable to resolve numerous factual issues regarding the division of the marital property on the basis of the existing record, the trial judge entered an order on January 22, 1977, setting aside the judgment of December 11, 1975, except insofar as it decreed a dissolution of the marriage of the parties. A trial was conducted before the court on August 15, 1977. At that hearing, Mrs. Culver offered no evidence with respect to the value of any of the marital property except her opinion as to the household goods in the family residence. In effect, Mrs. Culver rested upon her original evidence offered in 1974.

At this last hearing, Mr. Culver testified regarding property acquired by him since the date of the final separation. In addition to real estate, Mr. Culver was the owner of all of the stock in Torch Corporation, a business similar to Cumberland Welders. For the first time, Mr. Culver

offered an expert witness on the value of Cumberland Welders. Robert L. Jackson was the president of a similar company in Pineville, and had engaged in the purchase of other similar businesses. Mr. Jackson's testimony was apparently based upon the current assets and liabilities of the corporation. Mr. Culver also introduced testimony of his accountant, Frank A. Wall, who testified to the net worth of Cumberland Welders as shown by the corporation's tax returns for the years 1972–1976.

f. *Final Decree.* In the final judgment entered October 25, 1977, the trial judge awarded Mrs. Culver as her share of the marital property the sum of $110,300, payable in ten equal annual installments. The trial court made specific findings with respect to what assets constituted marital property. The trial judge also made a finding concerning the market value of each marital asset to the extent that there was any evidence of value in the record.

## II

On his appeal, Mr. Culver questions the findings of the trial court that various assets were marital property. In each case, we must determine whether the findings of the trial judge are clearly erroneous within the meaning of CR 52.01.

■ a. *Building and Lot Deeded to Hillary Culver.* The trial judge included as marital property a building and lot deeded to the daughter of the parties, Hillary Culver. A value of $3,000 was assigned to this lot. This property was used by Cumberland Welders in its business. The record establishes that the property was deeded to Hillary for tax purposes. The rent paid by the corporation was to be placed in a special fund to be used for Hillary's college education. The gift of the property to Hillary was made prior to the final separation of the parties. There is nothing to suggest that the gift was made as a means of dissipating the marital property. *See Barriger v. Barriger,* Ky., 514 S.W.2d 114 (1974). Consequently, it was error for the trial judge to include the value of that lot as marital property.

■ b. *93 Kentucky Avenue, Somerset, Kentucky.* The trial judge included as marital property the house and lot at 93 Kentucky Avenue in Somerset valued at $23,000. This property was purchased by Mr. Culver as a residence following the final separation but before entry of the final decree dissolving the marriage in December, 1975. The property was used as a residence for Mr. Culver and his daughter after Mrs. Culver had been granted sole possession of the family residence. KRS 403.190(3) provides that all property acquired by a spouse "after the marriage and before a decree of legal separation is presumed to be marital property." The actual separation of the parties in July 1973 was not the equivalent of a "decree of legal separation." Consequently, the statutory presumption of KRS 403.190(3) applies. Mr. Culver offered no evidence establishing the source of the funds used to purchase this property. He did not rebut the statutory presumption that the property was acquired by the use of marital property. The trial court did not err in holding this property to be marital property.

■ c. *Lincoln County Farm and Danville Property.* The trial judge included as marital property a house and farm on the Stanford-Danville Pike in Lincoln County, Kentucky, valued at $35,000. Also included as marital property was real estate and improvements located on Highway 150 in Danville, Kentucky, valued at $18,500. These properties were acquired by Mr. Culver after the entry of the decree dissolving the marriage on December 12, 1975. Consequently, there is no statutory presumption that these properties constitute marital property. Mrs. Culver had the burden of proving that these properties had been purchased with assets constituting marital property.

■ There is no evidence in the record identifying the source of the funds used to purchase the Lincoln County farm or Danville property. The record suggests the possibility that the Kentucky Avenue property has been sold and the proceeds invest-

ed in the Lincoln County farm. Assuming that this possibility is true, the fact remains that the value of the Kentucky Avenue property has already been used in calculating the marital property of the parties. Consequently, we conclude that the trial court erred in holding the Lincoln County farm and Danville property to be marital property in the absence of any evidence that these properties were purchased with marital assets not otherwise used in calculating the value of the marital property.

█ d. *43 Acre Farm and Houseboat.* Mr. Culver asserts that the trial judge erred in including as marital property the houseboat and the 43 acre farm located near the Mt. Victory Road in Pulaski County. He asserts that both these assets were purchased with funds inherited by him from his father. With respect to the houseboat, the trial judge clearly erred in finding that it was marital property. Both Mr. and Mrs. Culver testified that the houseboat was purchased with funds inherited by Mr. Culver from his father. In the decree of December 12, 1975, the court found that the houseboat constituted nonmarital property. In her motion to alter and amend this decree, Mrs. Culver did not challenge that finding.

█ The original decree also found the 43 acre farm to be nonmarital property. However, Mrs. Culver did seek to alter and amend that portion of the decree. In the initial proof, Mrs. Culver confessed complete ignorance as to the source of the funds used to purchase the 43 acre farm. Mr. Culver offered no documentary proof to support his simple statement that the farm had been purchased with funds inherited from his father. At the subsequent hearing in August 1977, Mr. Culver again failed to offer any documentary proof showing the source of the funds used to purchase the 43 acre farm. On the other hand, Mrs. Culver introduced evidence indicating that the inheritance was too small to have been the source for the purchase of the 43 acre farm after deducting the cost of the houseboat. Giving consideration to the presumption under KRS 403.190(3) that the farm was marital property, we conclude that the trial

judge did not err in including the value of that farm as marital property.

e. *Torch Corporation.* The trial judge found that the Torch Corporation constituted marital property. However, no value was attributed to the stock of the Torch Corporation because there was no evidence of probative value on that issue. Consequently, it is difficult to see how this finding could have prejudiced Mr. Culver. However, because the case is being remanded for further proceedings, we will consider the issue.

█ Torch Corporation is wholly owned by Mr. Culver. It was formed at the time of the separation because of the problems Mr. Culver foresaw attributable to the pending divorce proceedings. Mr. Culver claims that the capital for the Torch Corporation came from the inheritance from his father. However, the proof in the record supports a finding that the inheritance was only $2,600, of which $1,500 was expended on the houseboat. Torch Corporation acquired assets similar to those normally used in the business of Cumberland Welders. Mr. Culver has refused to produce any of the records relating to Torch Corporation even though Torch Corporation transacts business with Cumberland Welders. The trial court did not err in holding that Torch Corporation constituted marital property.

### III

Mr. Culver claims that the trial judge valued the marital estate without any deduction for debts. Specifically, he argues that the trial judge ignored liabilities of Cumberland Welders of approximately $82,000 at the end of 1973. This argument is totally without merit.

The trial judge valued the stock of Cumberland Welders at $100,000. It is obvious that this figure constituted net value after the deduction of the liabilities of the corporation. If Mr. Culver's argument were correct, the trial judge should have deducted liabilities in excess of $82,000 from the $100,000 value of the assets. This would have left a net value of less than $18,000, a

figure which is preposterous in light of the testimony by all of the witnesses.

■ The absurdity of this argument can be readily seen by examining the testimony of Mr. Harris, the only valuation witness who testified in the original hearings. According to Harris, the net worth of the corporation (retained earnings plus capital) exceeded $131,000. This valuation was based upon his appraisal of the fair market value of the assets of the corporation decreased by the amount of the liabilities of the corporation. In the revised balance sheet prepared by Harris, no consideration was given to good will, an item which was included in another higher valuation of the corporation by Harris. In light of Harris's appraisal of the corporation based upon the fair market value of assets decreased by liabilities of the corporation, the trial court's finding that Cumberland Welders had a value of $100,000 is not clearly erroneous. In fact, the trial court's valuation appears conservative.

There is nothing to suggest that the trial court included in its valuation of Cumberland Welders any amount for appreciation attributable to the personal efforts of Mr. Culver following the date of the decree dissolving the marriage. The record would support a finding that Cumberland Welders had a value of $100,000 prior to the decree dissolving the marriage, without regard to any subsequent appreciation.

## IV

Mr. Culver argues that the trial court erred in considering the report of the certified public accountant, Mr. Carney. Neither party called Mr. Carney as a witness. However, his reports to the court were made a part of the record, and the reports are referred to in the opinion by the trial judge. Culver asserts that Carney's reports were inadmissible because they constituted unsworn statements never subjected to cross-examination.

■ This argument is without merit. Carney was appointed by the court to assist the court in the difficult problem of dispos-ing of the chief marital asset, Cumberland Welders. As an officer of the court, Carney was under a duty to report to the trial judge the difficulties encountered by him in auditing the records of Cumberland Welders. The trial judge was also entitled to consider the extent to which the work of Mr. Carney was being hindered by Mr. Culver. Although the trial judge's opinion refers to the reports by Mr. Carney, the opinion does not purport to rely upon his reports for purposes of valuation. Consequently, Culver could not have been prejudiced by the trial judge's consideration of the reports.

Furthermore, the record establishes that Mr. Culver had ample opportunity to call Mr. Carney as a witness so that he might be examined regarding the reports. It was apparent that the trial judge would consider the report, but Mr. Culver never objected to the trial court's consideration of the Carney reports. Mr. Culver cannot complain for the first time in this court that the Carney reports should not have been considered.

■ The trial court did not err in assessing Carney's fee as a cost of the action. Such an allowance was within the sound discretion of the trial judge. KRS 403.220. We also find no error in the action of the trial court making Torch Corporation and Cumberland Welders parties to the proceedings. Mr. Culver held title to all of the stock in both corporations. They were, in effect, his alter egos. Under the circumstances, the trial judge did not err in placing a lien upon the assets of both corporations in order to secure the payment of the sum awarded to Mrs. Culver as a division of the marital property.

## V

The judgment of the circuit court awarding Mrs. Culver $110,300 as a division of the marital property must be reversed because that award is based upon the improper inclusion of the following assets as marital property: (a) building and lot deeded to Hillary Culver, $3,000; (b) houseboat, $1,500; (c) Lincoln County farm, $35,000;

(d) Danville property, $18,500. The circuit court should reconsider the division of marital property, eliminating from its consideration any property acquired by either spouse after the decree dissolving the marriage unless the proof establishes that such assets were acquired with marital property. With respect to assets acquired after the separation but prior to the decree dissolving the marriage, there is a presumption that the assets constitute marital property. In a division of such assets, the circuit court should consider that such post-separation acquisitions normally will not involve the "joint efforts" of the parties except to the extent that marital property acquired prior to the separation contributed to the post-separation acquisitions. On the other hand, if marital property has appreciated in value after the separation or decree dissolving the marriage because of general economic conditions rather than the efforts of only one of the parties, then such appreciation in value should be considered in the division of the marital property.

Because the proof offered by the parties was so meager or nonexistent in many areas (i. e. Torch Corporation), the circuit court, in its sole discretion may upon remand determine that certain issues should be reopened for further proof.

The judgment of the circuit court is reversed with directions to redetermine the division of marital property.

All concur.