RENDERED: JUNE 2, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0422-MR

TODD ROSS TURNER
APPELLANT

v.
APPEAL FROM WARREN CIRCUIT COURT
HONORABLE DAVID A. LANPHEAR, JUDGE
ACTION NO. 11-CI-01279

WENDI NICOLE TURNER
APPELLEE

OPINION
AFFIRMING IN PART, VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Todd Turner appeals from a family court order denying him visitation with his children for at least three months, requiring him to attend individual therapy, and providing that visitation would not resume until his therapist determined Turner was ready to constructively participate in family therapy. He also challenges the family court's holding him financially responsible for the court appearance of another therapist and its denial of his motion to vacate without a hearing. For the reasons set forth herein, we affirm the family court in

all other respects but we vacate its total denial of visitation for at least three months and remand to determine whether the serious endangerment standard is met.

## FACTS

Todd Turner (Father) and Wendi Turner[1] (Mother) have two children together: Older Child and Younger Child. Older Child was about sixteen years old and Younger Child was about eleven years old when the family court entered the orders at issue.

The parties had joint custody with Mother being the primary residential parent under their settlement agreement, which was incorporated into their 2012 divorce decree. The agreement noted Father previously had supervised visitation but stated the parties intended to shift towards him having unsupervised parenting time under local co-parenting guidelines. Attached to the settlement agreement was a copy of the court's standard timesharing and visitation guidelines signed by both parties. Several years passed with no litigation about custody, timesharing, or visitation.

In early 2020, Father filed a *pro se* motion to enforce his visitation, or timesharing rights, and to modify visitation/timesharing so the children could spend roughly equal time with both parents. Mother also moved to modify

---

[1] According to the Appellee brief and a filing in the record on appeal, Wendi Turner is now known as Wendi Ford. However, she is referred to as Wendi Turner in the notice of appeal.

timesharing and requested that the family court enter co-parenting guidelines and order the parties to participate in co-parenting counseling. She asserted the children would benefit from spending less time with Father. She attached an affidavit in which she alleged Father engaged in inappropriate behavior which posed risks to the children's safety and well-being. She averred there was a pending juvenile dependency, neglect, and abuse action regarding the children which had been filed since the divorce decree was entered.[2]

Both parties' motions to modify visitation or timesharing were initially set to be heard in September 2020 but the hearings were delayed for various reasons. In July 2020, an incident occurred resulting in a domestic violence petition being filed on behalf of the children. An emergency protective order was issued. But the domestic violence action was dismissed after an evidentiary hearing in August 2020.[3]

Also in August 2020, the family court entered an order requiring both parties to submit to psychological evaluations with psychologist Dr. Robert Bruce Fane. Mother complied with the order to submit to a psychological evaluation by late 2020. But Father did not. Mother successfully sought a continuance of the

---

[2] The record of the dependency, neglect, and abuse case is not before us.

[3] The record of the domestic violence action is not before us. But both parties alluded to the filing of the domestic violence petition in July 2020 and to the dismissal of the domestic violence action a few weeks later in pretrial compliance statements in this case's record on appeal. And the occurrence of these events appears undisputed.

hearing on timesharing until early 2021 based on various factors including Father's not having obtained a psychological assessment.

Mother asserted in pretrial compliance documents that the children's relationship with Father had deteriorated further since the dismissal of the domestic violence action and that Father had banned one of the children from his home. She also stated Older Child became depressed due to issues with Father and had been hospitalized.

In early February 2021, the family court conducted an evidentiary hearing on both parties' motions for modification.[4] Mother presented the testimony of the children's guidance counselors and family therapist Sarah Light. Their testimony was generally consistent with the allegations in pretrial compliance. However, the proof was not concluded at that time, in part because Father indicated he would need more time to cross-examine Light than the court's schedule allowed that day. (Also, Father had not submitted his assessment by Dr. Fane prior to this hearing and the family court and opposing counsel needed additional time to review the assessment.)

In March 2021, the family court entered an order stating that upon Father's agreement to follow Light's recommendations on an interim basis and

---

[4] Father's original motion had been initially denied for failure to provide contact information necessary for a virtual hearing. But Father filed another motion for modification of timesharing in early 2021 which was set to be heard along with Mother's modification motion.

pending a further hearing, Father would have timesharing with Older Child only in a therapeutic setting and timesharing with Younger Child would be at Light's discretion. The order specifically provided Light with discretion to determine the frequency, timing, and methods of timesharing with Younger Child. The March 2021 order further provided that timesharing may occur in a public place, supervised by Father's then-fiancée. Should there be a need for someone other than Father's fiancée to supervise timesharing periods, Light had discretion to approve the supervisor.

Prior to the next hearing on timesharing modification, Mother filed her updated pretrial compliance including a letter from therapist Light. Light noted that Younger Child stated she was uncomfortable with having visitation with Father outside the therapy office. Light also stated she had asked Father whether he was recording therapy sessions and reminded him that recording was prohibited to protect confidentiality. She asserted Father admitted to recording therapy sessions, said he was doing so to protect himself, was legally entitled to do so, and refused to stop.

Light recommended that timesharing remain supervised until progress was made in Father's relationship with the children. She also requested the court

order Father to stop recording therapy sessions.[5]

Meanwhile, Father filed a *pro se* motion in August 2021 requesting the family court undo its March 2021 order requiring that his time with the children be supervised. He contended he agreed to the supervision because proof had not been concluded. He asserted that due to two court dates being missed or postponed due to illness or pandemic-related backlogs, he was missing a lot of time with the children since the next court date was set for February 2022.

In September 2021, Father filed an emergency motion to dismiss the March 2021 order concerning visitation or timesharing. He argued the March 2021 order did not change his joint custody decision-making authority. He stated he found Light unprofessional or unethical and had informed her there would be no more therapy sessions and she would only be overseeing supervised visits.

Shortly thereafter, the family court entered an order denying the emergency motion. The family court found that having the children stop therapy with Light would not be in the children's best interests and would impede resolving the pending motions to modify timesharing. It ordered that Light

---

[5] Light also reported in this letter that Father had told the children he refused to bring their half-sibling from another relationship to therapy and they could only see the sibling if they agreed to spend time with him outside therapy. She also informed the court that Father's former fiancée – who had previously supervised Father's visits prior to the couple's breakup – expressed concerns about Father's children and her own children being fearful of Father or inappropriately disciplined by him. Light also opined that Father was manipulating the children by asking them to choose between their safety and seeing their sibling and by speaking negatively about Light.

continue as the children's therapist and that the next hearing would remain set for February 2022.

At the February 2022 hearing, Father appeared *pro se* and Mother appeared with counsel. Mother's attorney told the court that Older Child had recently attempted suicide due to fears that visits with Father would become unsupervised and that Older Child had entered a psychiatric hospital. Mother did not testify nor did either child.

The family court heard testimony, including from Light and from Father. Light testified that, shortly prior to the suicide attempt, she and the children had discussed upcoming court dates and the fact the court would be considering Father's request for unsupervised time with the children. She stated the children expressed concern about the court date and Father's request for unsupervised visits. She opined that the fear of a change to unsupervised time with Father was among other factors leading to Older Child's suicide attempt.

Light also testified to encountering difficulties with Father in therapy sessions – *i.e.*, his recording sessions, his lack of respect for authority in her view, and his refusal to participate meaningfully. She recommended that Father's visits with the children be suspended until he underwent individual therapy resulting in a change of attitude to make family therapy productive. She testified she had never made such a recommendation before and that she thought it was important for

-7-

children to have relationships with both parents as long as it did not endanger the children. But she opined that Father's lack of cooperation with family therapy was causing the children harm and impeding their progress.

Father testified about why he sought relief from the court and his view of the events. In response to the family court's questions, Father stated he believed he and Mother needed to communicate more effectively to co-parent and suggested individual and family therapy to help them co-parent and reduce the children's stress. He also stated that he needed to listen to the children and spend time with them without outside interference. He also expressed that he did not perceive Light as being fair or therapy with her as benefitting the children.

The family court inquired into what Father was willing to do to repair his relationship with his children and expressed concern about Older Child's recent suicide attempt. The judge further stated he perceived Light's testimony as indicating that the children were distressed and that he did not view Light's testimony as totally off base. He asked Father why was that the case and what would Light's motive be to fabricate? Father replied he did not believe Light's testimony was entirely fabricated and he did not know what her motivation was. But he expressed his belief that therapy with Light was causing alienation from his children.

The family court judge stated he was concerned about the suicide attempt and had a duty to do everything in his power to protect children from harm. The judge indicated he would not rule from the bench, but he asked Father if there was anything else he needed to say. Father repeated he needed to see his children and expressed his desire to pursue family therapy – separately and together – to take the pressure off the children and to allow effective co-parenting.

Mother's attorney then made a closing statement. She noted she did not have her client testify due to Mother's hoarseness from screaming at discovering the suicide attempt. She also stated that despite Mother's previous request for co-parenting counseling, Mother was no longer requesting that due to difficulties dealing with Father over the past couple of years. Counsel argued individualized assessments should be required before co-parenting counseling could occur and counsel asserted Father showed no accountability for actions which had harmed the children.

The family court took the matter under advisement. A few weeks later, it issued a written order that "all visitation and family therapy between" Father and the children cease immediately for at least three months while Father "seeks individual therapy" with Dr. Fane. It found Father had not cooperated with family therapy and stated: "His noncompliance in therapy has led this Court to believe a different approach to reunification is necessary." It also found a

complete breakdown in communication between Father and the children. It further found neither child had visited with Father outside therapy since February 2021. It found that Light testified Father had a "lack of reality" and that Light recommended Father have no further contact with the children "until [Father] has a change of attitude."

The family court also stated in this order that Father would be held financially responsible for Light's court appearance at the February 2022 hearing. It noted Mother paid for Light's previous court appearance in February 2021. Lastly, it denied Father's motion regarding visitation/timesharing, finding unsupervised 50/50 visitation not to be in the children's best interest.

Father filed a *pro se* motion to vacate. The trial court summarily denied the motion to vacate, holding Father failed to comply with CR[6] 7.02 by failing to state grounds with particularity and not clearly stating the relief sought. It also noted the motion failed to comply with CR 5.02's service requirements.

Father then obtained counsel and filed a timely appeal. On appeal, Father contends that the family court committed reversible error in not scheduling a hearing on his motion to vacate, suspending his visits with the children for at least three months without finding that visitation would seriously endanger the children, and holding him financially responsible for Light's court appearance.

---

[6] Kentucky Rules of Civil Procedure.

-10-

## ANALYSIS

### Family Court's Denial of Motion to Vacate is Not Reviewable on Appeal

Father first contends that the family court erred in denying his CR 59.05 motion to vacate without a hearing. But even if we agreed the denial of the CR 59.05 motion to vacate was erroneous, "we could not provide a remedy for the simple reason that we do not have jurisdiction over the trial court's denial of a CR 59.05 motion." *Ford v. Ford*, 578 S.W.3d 356, 365 (Ky. App. 2019). Orders denying motions to alter, amend, or vacate pursuant to CR 59.05 are interlocutory and not appealable. *Id.* (quoting *Hoffman v. Hoffman*, 500 S.W.3d 234, 236 (Ky. App. 2016)).

Though an order denying a motion to vacate under CR 59.05 is not appealable, the denial of CR 59.05 relief does not change the underlying judgment. So, we construe the attempt to appeal from the denial of CR 59.05 relief as an appeal from the underlying judgment. *Ford*, 578 S.W.3d at 366. In sum, we do not review the family court's denial of the motion to vacate in itself. But we consider whether Father is entitled to relief on his appeal from the underlying Order Regarding Visitation and Therapy.

### Order Regarding Visitation and Therapy is Appealable

Before addressing the merits of Father's arguments of error in the Order Regarding Visitation and Therapy, we note this order is appealable. This

order may not facially appear final and appealable under CR 54.01 or CR 54.02 requirements especially since the family court envisioned possibly issuing additional rulings after the passage of at least three months.[7] But we conclude the order is by its nature appealable as a decision impacting the custody and care of the minor children. *See N.B. v. C.H.*, 351 S.W.3d 214, 219 (Ky. App. 2011) (quoting *Gates v. Gates*, 412 412 S.W.2d 223, 224 (Ky. 1967)) (rejecting party's argument that a post-divorce order regarding various issues including counseling was not a final and appealable order as: "When, by the exercise of its continuing jurisdiction, the family court enters an order regarding a minor child's care and custody, that order 'is an appealable order and this Court may review it.'"). Furthermore, our Supreme Court has specifically held that orders modifying final

---

[7] "Typically, only final judgments are appealable. CR 54.01 states: '[a] final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding.'" *Upper Pond Creek Volunteer Fire Department, Inc. v. Kinser*, 617 S.W.3d 328, 333 (Ky. 2020).

CR 54.02(1) provides that a court may grant a final judgment on less than all of the claims in an action by reciting that the judgment is final and there is no just reason for delay but: "In the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

Given the multiple pending motions noted but not all expressly resolved in the Order Regarding Visitation and Timesharing, it is not clear whether all of the parties' rights in the action were adjudicated. And this order does not contain the CR 54.02 recitations that it is final or that there is no just reason for delay.

orders about visitation and timesharing are final and appealable. *See Anderson v. Johnson*, 350 S.W.3d 453, 455-56 (Ky. 2011).

## Standards of Review for Order Regarding Visitation and Therapy

Generally, we review a family court's decision to modify visitation or timesharing for abuse of discretion. *See Pennington v. Marcum*, 266 S.W.3d 759, 769 (Ky. 2008). Similarly, we review for abuse of discretion its decisions regarding counseling, *N.B.*, 351 S.W.3d at 220; and assessment of costs, *Culver v. Culver*, 572 S.W.2d 617, 622 (Ky. App. 1978). However, we review its application and interpretation of statutes *de novo*. *See Adamson v. Adamson*, 635 S.W.3d 72, 77 (Ky. 2021) ("The interpretation and application of statutes is a question of law and the lower courts' judgments are not entitled to deference."). Lastly, we review factual findings for clear error; meaning we will not disturb factual findings unless they are not supported by substantial evidence. *Miranda v. Miranda*, 536 S.W.3d 196, 198 (Ky. App. 2017).

## Any Error in Family Court's Holding Father Financially Responsible for Therapist Light's Court Appearance is Unpreserved and Not Palpable

Father argues the family court erred in holding him financially responsible for paying for therapist Light's February 2022 court appearance. He argues this is especially so since the family court did not expressly discuss the

parties' financial circumstances, *see* KRS[8] 403.220,[9] and since, in his view, Light

testified as an expert on Mother's behalf.

Father asserts he preserved this issue by filing his motion to vacate the

family court's order regarding visitation and therapy. But his written motion does

not mention any issues about financial responsibility for Light's court appearance

at all. Thus, he does not show where in the record he preserved this issue by

bringing alleged errors in this regard to the family court's attention. *See Oakley v.*

*Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012) (purpose of preservation statement

requirement is to assure appellate court that issue was "properly presented" to the

trial court and thus appropriate for review on appeal).

Father's failure to show where this issue was preserved affects the

standard of review we employ – "whether we employ the recognized standard of

review, or in the case of an unpreserved error, whether palpable error review is

being requested and may be granted." *Id.* Father did not expressly request

palpable error review in his brief.

Even if we leniently conduct an unrequested palpable error review on

---

[8] Kentucky Revised Statutes.

[9] KRS 403.220 provides: "The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter . . . ."

-14-

this unpreserved issue,[10] the family court's handling of this matter does not arise to the level of palpable error resulting in manifest injustice. *See* CR 61.02. This is particularly true since the family court had previously ordered Mother to pay for Light's previous court appearance in February 2021. And, as Mother points out, the record is not devoid of information about the parties' finances. Also, the parties agreed to split the children's health care costs, and the cost of the therapist's court appearance might reasonably be construed as akin to a health care cost.

Furthermore, we do not construe *Poe v. Poe*, 711 S.W.2d 849 (Ky. App. 1986) – cited in Father's brief – as calling for Father to be relieved of the cost of paying for Light's court appearance.

*Poe* does not discuss issues about ordering a party to pay costs associated with a witness's testimony. The issues on appeal in *Poe* included a challenge to the award of attorney fees under KRS 403.220 and a challenge to the trial court's reliance on the testimony of psychologists retained by a party. *Poe*, 711 S.W.2d at 850. *Poe* only discusses KRS 403.220 requirements in the context

---

[10] At least in the context of criminal cases, there is binding authority stating that appellate courts need not consider unpreserved issues in the absence of a request for palpable error review unless there are "extreme circumstances amounting to a substantial miscarriage of justice[.]" *See Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008) ("Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to [Kentucky Rule of Criminal Procedure] RCr 10.26 unless such a request is made and briefed by the appellant."). But there appear to be no published Kentucky appellate opinions clearly adopting this principle in civil cases despite the identical language used in RCr 10.26 and CR 61.02.

of attorney fees to say that consideration of finances was required – though this Court affirmed the attorney fee award despite a lack of supporting affidavits. *See id*. at 852. Its discussion of expert witness testimony issues states only that a court may consider testimony of experts retained by parties under KRS 403.290 and is not limited to considering only experts appointed by the court. *Id*. In short, financial responsibility for a witness's court appearance was not at issue in *Poe*. On the other hand, other authority indicates that a court may sometimes validly assign costs associated with evidence to a party despite the evidence being unfavorable to that party. *See generally Culver*, 572 S.W.2d at 622 (upholding party being held financially responsible for cost of accountant report unfavorable to that party).

In short, Father is not entitled to relief on this unpreserved issue – particularly as he does not identify the amount of money at stake to pay for Light's February 2022 court appearance nor indicate he is unable to pay such an amount. Furthermore, there is no clear indication in the record that he is indigent as he has not requested to proceed in *forma pauperi*s on appeal and has not pointed to any affidavit of indigency in the record.

**Standards Governing Modification of Visitation or Timesharing**

Next, we address the key issues in this appeal – the validity of the family court's judgment regarding Father's rights to visitation or timesharing.

-16-

Both parties, who had joint custody of the children, sought modification of timesharing – which they and the family court sometimes referred to as visitation.[11] Modification of timesharing and visitation is governed by KRS 403.320. *Layman v. Bohanon*, 599 S.W.3d 423, 431 (Ky. 2020).

> KRS 403.320 provides in regard to parents:
>
> (1) A parent not granted custody of the child and not awarded shared parenting time under the presumption specified in KRS 403.270(2), 403.280(2), or 403.340(5) is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health. Upon request of either party, the court shall issue orders which are specific as to the frequency, timing, duration, conditions, and method of scheduling visitation and which reflect the development age of the child.
>
> (2) If domestic violence and abuse, as defined in KRS 403.720, has been alleged, the court shall, after a hearing, determine the visitation arrangement, if any, which would not endanger seriously the child's or the custodial parent's physical, mental, or emotional health.
>
> (3) The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health.

---

[11] Technically, parents with joint custody have timesharing rather than visitation. If one parent has sole custody, the non-custodial parent may have visitation. But often, as in this case, the terms visitation and timesharing are used interchangeably. *Pennington*, 266 S.W.3d at 765.

Our Supreme Court has construed KRS 403.320(3) to mean timesharing can be modified if the family court finds modification in the children's best interests. But a court cannot restrict timesharing – meaning order less than reasonable timesharing – unless it finds the child's health "was seriously endangered." *Layman*, 599 S.W.3d at 431. There is no set definition of what less than reasonable timesharing means in every case; however, "it does not necessarily mean that a parent has less than reasonable timesharing just because he or she spends less time with the child than under the original timesharing arrangement." *Id*. at 432.

Even though precedent does not rigidly define what less than reasonable timesharing is, surely the family court order's denying any form of timesharing or visitation for at least three months is a restriction and not a mere modification.[12] After all, the practical effect is to deny any visitation or timesharing – even supervised – for at least three months. And long-standing precedent holds that a parent should not be denied visitation entirely without a

---

[12] Our holding that the suspension of visitation for at least three months with additional conditions to resume visitation here is a restriction is limited to the facts of the instant case. Perhaps in some factual scenarios a prior visitation or timesharing order might be modified in such a way that a parent does not have visits with his/her child(ren) for a period of a few weeks or more without that modification amounting to restricted or less than reasonable visitation or timesharing. For example, where a child lives hundreds of miles away from a parent, a modification from the parent having visits once a month to only having visits once every two or three months might be considered a reasonable modification rather than a restriction or less than reasonable visitation or timesharing under some circumstances.

-18-

finding that visitation would result in serious endangerment. *Smith v. Smith*, 869

S.W.2d 55, 56 (Ky. App. 1994) (construing KRS 403.320(1)).

Father contends the family court improperly suspended his visitation

for at least three months without making a finding of serious endangerment and

erroneously required him to attend individual therapy with Dr. Fane. He asserts he

preserved this issue for review through his motion to vacate the family court's

Order Regarding Visitation and Therapy.

### Father Preserved Issue of Alleged Insufficiency of the Evidence but Family Court's Factual Findings are Not Clearly Erroneous

Father generally expressed his unhappiness with the family court's

rulings on visitation or timesharing and counseling in his *pro se* motion to vacate.

He specifically asked to vacate the family court's order about visitation and

therapy "in regard to breakdown in communication between [Father] and both

children" as well as "Ms. Light's testimony, and lack of evidence submitted to the

courts." We construe this as a challenge to the sufficiency of the evidence,

especially for the family court's finding of a breakdown in communication, and a

suggestion that Light's testimony was problematic.

In his appellate brief prepared by counsel, Father points out that

neither Mother nor either child testified at the hearing. And he asserts that Light's

testimony was mainly about his failure to follow her rules and conditions, such as

his recording therapy sessions – which he points out the family court had not

previously forbidden and which he asserts was necessary to show Light misstated what happened in therapy. But he cites no authority precluding the family court from considering Light's testimony about the effect of Father's recording sessions in the absence of a prior court order forbidding the recording of therapy sessions.

Furthermore, based on our review of the record, the family court's factual findings are not clearly erroneous as they are supported by substantial evidence. *See* CR 52.01. Whether or not we would have made the same findings and regardless of conflicts in the evidence, we cannot disturb factual findings supported by substantial evidence as we must give due regard to the family court's assessments of the weight of the evidence and the credibility of witnesses. *Jones v. Jones*, 617 S.W.3d 418, 424-25 (Ky. App. 2021); *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). In sum, we reject his argument that the family court's factual findings are not supported by sufficient evidence.

### Family Court Identified Facts Leading to Its Decision, but Failed to Identify or Address Proper Legal Standard to Deny Visitation or Timesharing Entirely for At Least Three Months

As for Father's argument that the family court failed to make findings of fact or conclusions of law identifying why it found the restrictions it imposed necessary, we agree in part but disagree in part. The family court made factual findings indicating what facts led it to make the decision it made. For example, it found a total breakdown in communication between Father and the children, noted

-20-

its greatest concern about the suicide attempt, and found Father's answers about what he would do to restore the relationship with the children unsatisfactory. The family court discussed the circumstances leading to the entry of the March 2021 interim order in written findings, and it found the children had not visited with Father outside therapy for a year. It also found that Light testified to her serious concerns about Father's behavior and parenting ability, to his blatantly disregarding rules (including recording therapy sessions), his "lack of reality," and his refusal to engage in therapy. It noted her recommendation of no further contact with the children until Father's attitude changed in its written findings. The family court also orally indicated it found Light's testimony credible when asking Father questions during his testimony.

However, the family court failed to identify what legal standard it applied to totally deny visitation for at least three months subject to additional conditions to resume visitation.[13] For example, the court made no reference to best interests or serious endangerment when proclaiming that Father's visitation would cease for at least three months. *See* KRS 403.320(3). In other words, it failed to make the necessary conclusion of law to restrict timesharing or visitation by not

---

[13] In contrast, the family court clearly stated that it denied Father's request for unsupervised, 50/50 timesharing based on that not being in the children's best interest. But the family court did not expressly grant or deny Mother's motion to modify timesharing. (We also note that Mother's motion for modification did not explicitly and specifically request that the family court deny Father any visitation, although she clearly opposed his request for unsupervised visits and she asserted that reducing his time with the children would be in the children's best interest.)

allowing it at all for a period of months. *See Anderson*, 350 S.W.3d at 458-59 (explaining trial court made the required conclusion of law in that case to modify timesharing by determining modification to be in the child's best interest, but trial court made no factual findings to explain why it reached that conclusion).

Unlike issues of the sufficiency of the evidence, Father did not specifically raise the family court's failure to discuss KRS 403.320's legal standards before suspending any type of visitation or timesharing in his motion to vacate. Father also has not pointed to anywhere else in the record where he requested that the family court issue additional findings of fact or conclusions of law. So, it is not clear that he raised this issue to the family court. *See Oakley*, 391 S.W.3d at 380. And Father has not expressly requested palpable error review.

Nonetheless, we must vacate that part of the family court's order which totally denies Father any form of timesharing or visitation – even supervised – for at least three months without a determination of serious endangerment.[14] *See* KRS 403.320(2), (3). *See also Baldwin v. Mollette*, 527 S.W.3d 830, 834 (Ky. App. 2017) (reversing family court order denying parent any visitation during

---

[14] KRS 403.320(2) states that where domestic violence is alleged, the court must determine, after a hearing, what visitation arrangement, if any would not seriously endanger the child or the custodial parent. It appears undisputed that the dismissed domestic violence case the parties alluded to was brought on behalf of the children so presumably the allegation was that domestic violence was directed toward them rather than a parent. Nonetheless, this statutory subsection requires a determination that any visitation arrangement ordered must not seriously endanger either the child or the custodial parent when domestic violence is alleged – apparently regardless of whether the alleged victim(s) was the child(ren) or a parent or both.

prison term which would last at least a year after the hearing due to family court's lack of reference to serious endangerment standard in KRS 403.320(1) and remanding for new hearing to consider whether visitation would seriously endanger the child).[15]

We cite with approval the following discussion from a Kentucky family law treatise about the standard for totally denying visitation – albeit in the context of ruling on initial motions for visitation rather than modification motions – which may provide useful guidance to the family court on remand:

> A court may limit a parent's visitation if it finds that a parent's behavior or the conditions under which the visitation will be exercised seriously endanger the child. The statutory standard requires that the court use the least restrictive alternative consistent with protecting the child, whether that requirement arises from the "children's rights" aspect of the statute or the statute's conception of parental rights. However, the least restrictive alternative requirement should not mean that a "no contact" order cannot be entered if needed to protect a child's physical, mental, moral or emotional health. An order barring the child from all contact with a parent should be used only

---

[15] Despite no prior discussion of KRS 403.320 by the family court or the parties – even in appellate briefs, we vacated a family court order denying a parent any visitation without addressing whether visitation would seriously endanger the child in *Shofner v. Thompson*, No. 2019-CA-001235-ME, 2020 WL 2510910, at *5 (Ky. App. May 15, 2020) (unpublished). Although this unpublished opinion is not binding authority, *see* Kentucky Rules of Appellate Procedure 41(A), we find it persuasive and consider it in the absence of published precedent on the same point. Further, we believe it consistent with our published precedent in *Baldwin*, 527 S.W.3d at 830. We did not explicitly discuss whether the incarcerated parent who represented himself before the family court had argued KRS 403.320 to the family court or preserved the issue for appeal in *Baldwin*; however, given the circumstances, the issue was likely not preserved.

> in extreme cases because there are other, less drastic alternatives, such as supervised visitation.
>
> . . .
>
> A parent's mental health can affect his or her visitation rights. The parent's rights can be restricted if his or her behavior is dangerous to the children. In *Hornback v. Hornback*,[16] the trial court found that visitation with a seriously mentally ill mother would endanger the children. If a parent poses some threat, a court may wish to consider whether supervised visitation can remove that threat. Some courts have conditioned visitation on the parent's participation in treatment.

16 LOUISE EVERETT GRAHAM & JAMES E. KELLER, KY. PRAC. DOMESTIC RELATIONS L. § 22:6 *Visitation – Grounds for limiting* (November 2022 update) (footnotes omitted). *See also id*. at § 22:8 *Visitation – Modification* (noting recent published precedent requiring only a best interest finding to support modification not resulting in restriction or less than reasonable visitation, but also urging consideration of risk of harm to children when ruling on modification motions).

 The family court's Order Regarding Visitation and Therapy modified its prior orders about timesharing and denied Father any visitation – even supervised visitation – for at least three months. But the family court did not determine whether visitation seriously endangered the children or whether the suspension of visitation for three months with the additional conditions for

---

[16] 636 S.W.2d 24 (Ky. App. 1982).

resuming visitation represented the only visitation arrangement which would not seriously endanger the children's physical, mental or emotional health. *See* KRS 403.320(2), (3).

Mother argues in her brief that the family court's factual findings indicate that the family court "believed that, at least on a temporary basis, visitation between the Respondent [Father] and children would seriously endanger them physically, mentally, or emotionally." But we do not know what the family court judge subjectively believed in this regard in the absence of an explicit determination of whether the KRS 403.320 serious endangerment standard was met. And while the evidence might be sufficient to support a determination that any timesharing or visitation – even supervised – would seriously endanger the children under the circumstances presented at the time of the hearing, we cannot make this determination for the family court. "As an appellate court, we review judgments; we do not make them." *Klein v. Flanery*, 439 S.W.3d 107, 122 (Ky. 2014).

While we vacate the family court's denial of any visitation for at least three months here, we do not suggest that the family court could not suspend visitation for a few months subject to the same conditions if it does determine that the serious endangerment standard is met. For example, we are aware that our Supreme Court affirmed a family court order suspending a parent's visitation for

an indefinite period until mental health professionals determined it was appropriate for visitation to resume – simply stating there was no abuse of discretion under the circumstances of the case. *May v. Harrison*, 559 S.W.3d 789, 790-91 (Ky. 2018).

The majority opinion in *May* does not discuss KRS 403.320. However, the concurring opinion notes the family court judge would have to determine whether a child's health or welfare was seriously endangered "per the directives of KRS 403.320" before denying a parent any visitation. *May*, 559 S.W.3d at 794 (Keller, J., concurring in result only). And since a child described being subjected to parental rape and sexual abuse by a stepparent during an *in camera* interview, *id.* at 790-91, perhaps the majority in *May* implicitly concluded the serious endangerment standard was so obviously met that no discussion of KRS 403.320 requirements was necessary.[17]

Obviously, the facts of *May* – involving allegations of parental rape – are different from this case. Yet *May* certainly indicates there are situations where it is appropriate to suspend a parent's contact with a child until a mental health professional determines that resuming visitation or timesharing is appropriate. We

---

[17] Here, by contrast, neither Older Child nor Younger Child nor Mother testified. This could be a factor used by a court to assess whether there was evidence sufficient to meet the serious endangerment standard. However, there was some evidence in the record regarding Father's interactions with the children and his parenting style. Moreover, we are not aware of any effort by Father to request that either child or Mother testify. The family court on remand must assess and weigh the evidence afresh to determine whether it is sufficient to meet the serious endangerment standard.

recognize the broad discretion afforded to family courts in such matters and leave the matter for the family court to decide under the proper standard. However, we caution the family court that it cannot validly modify prior timesharing or visitation orders to totally deny any visitation for extended periods without first determining that visitation would otherwise result in serious endangerment.

To be clear, we do not disturb the family court's denial of Father's request for unsupervised, 50/50 timesharing. Nor do we suggest that the family court cannot require Father to attend therapy or counseling for purposes related to visitation or timesharing. *See N.B.*, 351 S.W.3d at 220 (citing KRS 23A.110(1)) (recognizing family court's discretion to order counseling as a tool to improve family relationships). Under the facts and circumstances here, there was no abuse of discretion in ordering Father to participate in therapy or in denying his request for unsupervised, 50/50 timesharing.

We simply vacate the total denial of any timesharing or visitation – even supervised – in the absence of a finding of serious endangerment and remand to determine the matter under KRS 403.320's serious endangerment standard. That is not to say the family court may not validly enter an amended order with the same restrictions as the original Order Regarding Visitation and Therapy. It can if, on remand, the family court determines that visits would seriously endanger the children. Or also, if it determines that suspending visits for at least three months

while Father undergoes individual therapy with Dr. Fane and until Dr. Fane determines Father can constructively participate in family therapy is the only visitation-arrangement which would not result in serious endangerment.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the Warren Family Court's Order Regarding Visitation and Therapy in all other respects, but we **VACATE** the total denial of any form of timesharing or visitation for at least three months and **REMAND** for the family court to make a proper determination under the KRS 403.320 serious endangerment standard.

ALL CONCUR.

BRIEF FOR APPELLANT:

Kenneth A. Meredith II
Bowling Green, Kentucky

BRIEF FOR APPELLEE:

Ashlea Shepherd Porter
Bowling Green, Kentucky